# IN THE COURT OF APPEALS OF IOWA

No. 20-1573
Filed December 15, 2021

**MEGAN LANSING,**
Petitioner-Appellee,

**vs.**

**JEREMY MEYER,**
Respondent-Appellant.

_____


Appeal from the Iowa District Court for Winneshiek County, Alan Heavens, Judge.


Jeremy Meyer appeals a custody order granting physical care to Megan Lansing. **AFFIRMED AS MODIFIED**.


Jeremy L. Thompson of Putnam, Thompson & Casper, P.L.L.C, Decorah, for appellant.

Stephen J. Belay of Anderson, Wilmarth, Van Der Matten, Belay, Fretheim, Gipp, Evelsizer Olson, Lynch & Zahasky, Decorah, for appellee.


Considered by Mullins, P.J., and May and Ahlers, JJ.

**MAY, Judge.**

This case is about A.M., born in 2018. A.M.'s parents are Jeremy Meyer and Megan Lansing. In a thorough decree, the district court granted the parents joint legal custody, denied Jeremy's request for joint physical care, placed physical care with Megan, and granted visitation to Jeremy. On appeal, Jeremy contends (1) we should order joint physical care; (2) alternatively, we should place physical care with Jeremy; or (3) we should revise Jeremy's visitation schedule as a last resort. We affirm as to the physical-care issues but modify the visitation schedule.

Our review is de novo although "we afford deference to the district court for institutional and pragmatic reasons." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017).

Our analysis begins with Jeremy's request for joint physical care.[1] We order joint physical care only if it is the child's best interest. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007) ("Any consideration of joint physical care, however, must still be based on Iowa's traditional and statutorily required child custody standard—the best interest of the child."). In making that determination, we consider the record as a whole in light of the factors identified in section 598.41(3) and our case law. *See id.* at 696. Where, as here, both parents are suitable caregivers, our decision usually boils down to "four key considerations: (1) stability and continuity of caregiving; (2) the ability of [the parents] to

---

[1] We use the same legal analysis when establishing custody and physical care of a child in an Iowa Code chapter 600B (2019) proceeding as we do in dissolution proceedings. *See* Iowa Code § 600B.40 (providing section 598.41 shall apply when in determining the visitation and custody arrangements of a child born out of wedlock); *Hensch*, 902 N.W.2d at 825.

communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) the degree to which parents are in general agreement about their approach to daily matters." *In re Marriage of Geary*, No. 10-1964, 2011 WL 2112479, at *2 (Iowa Ct. App. May 25, 2011) (citing *Hansen*, 733 N.W.2d at 696–99). Applying these principles here, we agree with the district court that joint physical care is not in the best interest of the child. This conclusion is supported by, among other things (1) the historical caretaking arrangement, under which Megan has served as the child's primary physical caretaker since birth; (2) the parents' failure to maintain respectful communications on a consistent basis; (3) the parents' mutual distrust; (4) the high degree of conflict between the parents; and (5) the parents' lack of agreement in their approach to daily parenting issues.

We turn next to Jeremy's argument that he—not Megan—should have physical care. Again, we have considered the record as a whole in light of the factors identified in Iowa Code section 598.41(3) and our case law. When deciding which parent should have physical care, we strive to advance the "gender neutral goals of stability and continuity with an eye toward providing the [child] with the best environment possible for their continued development and growth." *Hansen*, 733 N.W.2d at 700. Like the district court, we believe these goals are best advanced by placing physical care with Megan. As noted, Megan has served as the child's primary physical caretaker since birth. And so far, the child is doing well: as the district court found, the child is "happy, healthy, and friendly." So, at this time, we see no reason to experiment with a different arrangement. Rather, like the district court, we think changing physical care "at this time would be a

dramatic" and unnecessary "disruption" of the arrangement under which the child has "thrived" so far.

Finally, we have considered Jeremy's requests to alter the visitation schedule. The district court granted Jeremy one weeknight overnight each week, every other weekend, two two-week periods each summer, Jeremy's birthday, father's day, alternating holidays, and four days over winter break. Jeremy requests several changes to the visitation schedule. We address each of them.

We begin by addressing Jeremy's request for a second weeknight overnight. Prior to trial, the parties were governed by a temporary order that called for multiple weeknight overnights. This arrangement did not work out well. The multiple midweek transitions were hard on the child. They required too much "back-and-forth." And the handoffs were frequently contentious. As the district court put it, "two midweek overnights has proven to be one too many." We adopt this finding and decline to alter the midweek visitation plan.

We have also considered Jeremy's other requests for additional visitation time, including his requests for two additional weeks of summer vacation and for Sunday nights on his visitation weekends. Jeremy contends that, because the district court found Jeremy is a good caregiver who enjoys a strong parent-child bond, more visitation would be better for the child. But there is a tradeoff: more time with Jeremy means less time with Megan. It was the district court's job to find a balance that serves the child's best interest. The court did so and "we decline to tinker." *See In re Marriage of Slayman*, No. 16-1240, 2017 WL 2181865, at *5 (Iowa Ct. App. May 17, 2017) (declining "to tinker" with the district court's visitation schedule because it was "in the children's best interests").

But we take a different view of Jeremy's request for flexibility in using his summer visitation. Jeremy owns a concrete company that requires him to routinely work many long hours, especially in the summer months. So his request to use his "summer" visitation time at other points in the year seems appropriate. And while Megan generally argues the district court's visitation schedule is good enough "as is," Megan offers no specific reason to deny this request. All things considered, we believe the request should be granted. So we modify the decree to allow Jeremy to exercise his summer visitation (the two two-week periods) during other parts of the year.[2] But we require Jeremy to give Megan thirty days notice before exercising this visitation. Additionally, if Jeremy exercises this visitation while the child is in school, Jeremy must ensure the child does not miss school. Furthermore, when the child is in school, Jeremy may not exercise more than one week of this visitation during a calendar month.

Finally, we note Megan requests appellate attorney fees. Appellate attorney fees are awarded upon our discretion and are not a matter of right. *See* Iowa Code § 600B.26 ("In a proceeding to determine custody or visitation, or to modify a paternity, custody, or visitation order under this chapter, the court may award the prevailing party reasonable attorney fees."). When considering whether to exercise our discretion, "we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *Hensch*, 902 N.W.2d

---

[2] We emphasize that the other provisions of the "summer" visitation schedule remain in effect, e.g., Megan's right to midweek visitations. The other visitation provisions remain in place as well.

at 827.  Upon consideration of these factors, we deny Megan's request for attorney fees.

**AFFIRMED AS MODIFIED.**